# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAREN McINTYRE and** <br> **JULIE BURKE,** <br>      **Plaintiffs,** <br><br> v. <br><br> **COUNTY OF DELAWARE,** <br> **JOE BRENNAN, and** <br> **TIM BOYCE,** <br>      **Defendants.** | **CIVIL ACTION** <br><br><br><br> **NO. 18-5066** |

# M E M O R A N D U M

DuBois, J.                                   August 16, 2019

## I. INTRODUCTION

Plaintiffs Karen McIntyre and Julie Burke, former employees of the Delaware County Emergency Services Department, bring this action asserting sex and age discrimination, hostile work environment, retaliation, and post-employment retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.*, 42 U.S.C. § 1983, the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), P.S. §§ 951, *et seq.*, and the Pennsylvania Whistleblower Law ("PWL"), 43 P.S. §§ 1421, *et seq.*.

Presently before the Court is Motion of Defendants Delaware County, Joe Brennan, and Tim Boyce to Dismiss Plaintiffs' Second Amended Complaint. For the following reasons the Court grants in part and denies in part defendants' motion to dismiss.

## II. BACKGROUND[1]

Plaintiffs, McIntyre and Burke, had been employed for "decades" by the Delaware County Emergency Services Department ("ESD") prior to their termination in August of 2018.

---
[1] In this Memorandum, the Court includes only those facts necessary to explain its decision.

Sec. Am. Compl. ¶¶ 2–3. At the time of their termination, McIntyre, age 52, worked as an Information Systems Coordinator while Burke, age 57, worked as a "911 Coordinator." *Id.* ¶¶ 4–6. Joe Brennan was McIntyre and Burke's supervisor. *Id.* ¶ 7. Tim Boyce was McIntyre and Burke's "superior" in his role as Delaware County Director of the ESD. *Id.* ¶ 7.

Plaintiffs assert that the ESD routinely engaged in discriminatory practices, including, (1) paying female employees "lower salar[ies] and hourly wages as compared to their male counterparts," (2) providing female employees with fewer opportunities for promotions and pay increases, (3) inequitably administering vacation time and sick days, (4) providing male employees with unearned overtime pay and not providing female employees with the same benefits, and (5) allowing male employees use of County owned vehicles "while no female employees were provided with such a perk." *Id.* ¶¶ 13–22.

McIntyre and Burke each made "multiple oral and written reports to their superiors of discriminatory, retaliatory, wasteful and fraudulent practices at the [ESD]," including letters to Lou DeVlieger, the Director of Personnel, in May and June 2017. *Id.* ¶¶ 28–29. Brennan threatened their job security if they ever put their complaints in writing or made a complaint outside of the ESD, saying "you are not to worry about what other people do here." *Id.* ¶ 30.

In the two years leading up to their termination, plaintiffs were retaliated against by their superiors. For example, in December of 2016, plaintiffs were "stripped of their duties without any explanation" and "forced to move from their offices to administrative cubicles." *Id.* ¶ 23. Beginning in January 2017, plaintiffs were required by Boyce to attend twice-daily meetings with Brennan. *Id.* ¶ 24. There was no such requirement for the male employees. *Id.* ¶ 24. In May 2017, "Brennan and Boyce further retaliated against [p]laintiffs by requiring Ms. McIntyre and Ms. Burke to document their daily tasks and goals for each work day." *Id.* ¶ 25.

Plaintiffs further allege that they were retaliated against through a "bogus investigation" involving allegations that plaintiffs had accessed pornographic files on their work computers. *Id.* ¶ 45. On two separate occasions in 2017 McIntyre returned to her work computer to find pornographic files, that she had not accessed, open on her desktop. *Id.* ¶ 38. After these incidents, McIntyre anonymously reported the presence of pornography on the computer system to Delaware County Counsel Brian Zeidek. *Id.* ¶ 39. In March 2018, Burke and McIntyre were both questioned by detectives from the Criminal Investigations Division ("CID") of the Delaware County District Attorney's Office and placed on paid administrative leave "ostensibly related" to their computer activity. *Id.* ¶ 33. Plaintiffs assert that neither of them ever accessed files on their computers that they were not authorized to access. *Id.* ¶ 37.

After being investigated by the CID, plaintiffs were terminated on August 22, 2018.[2] *Id.* ¶ 45. Plaintiffs claim that their suspension and termination was retaliation by their superiors "for their repeated reports of wrongdoing to management and the EEOC." *Id.* ¶ 45. Plaintiffs further allege that they were subjected to additional retaliation after their termination through the County's opposition to their rightful unemployment benefits and roadblocks to "COBRA rights and the return of personal effects." *Id.* ¶ 46.

After exhausting their administrative remedies,[3] plaintiffs filed their Complaint on November 23, 2018, the First Amended Complaint on November 28, 2018, and the Second Amended Complaint on February 15, 2019. Plaintiffs assert the following claims in the Second Amended Complaint: (1) sex discrimination, hostile work environment, retaliation, and post-employment retaliation claims under Title VII against the County of Delaware (Counts I & II);

---

[2] Both plaintiffs allege that they were replaced by employees who were younger than them. *Id.* ¶ 88.
[3] Burke filed a Charge of Discrimination with the EEOC on May 24, 2018, and again following her termination on August 28, 2018. Sec. Am. Compl. ¶ 43. McIntyre filed a Charge of Discrimination with the EEOC on June 6, 2018, and again following her termination on August 22, 2018. *Id.* ¶ 44.

3

(2) Due Process, First Amendment, and Equal Protection violations under 42 U.S.C. § 1983 against the County of Delaware, Brennan, and Boyce (Count III); (3) age discrimination, hostile work environment and retaliation claims under the ADEA against the County of Delaware (Count IV); (4) sex and age discrimination, hostile work environment, and retaliation claims under the PHRA against the County of Delaware (Count V); and (5) violations of the Pennsylvania Whistleblower Law against the County of Delaware (Count VI). On March 1, 2019, defendants filed the present partial motion to dismiss. On March 15, 2019, plaintiffs responded. The motion is thus ripe for decision.

### III. LEGAL STANDARD

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of

public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

Defendants' partial motion to dismiss seeks dismissal of plaintiffs' claims under Title VII (Counts I & II), § 1983 (Count III), the Whistleblower Act (Count VI), and plaintiffs' claims for punitive damages against Delaware County. The Court addresses each argument in turn.

### A. Title VII Claims (Counts I & II)

#### 1. Exhaustion of Administrative Remedies

As an initial matter, defendants argue that plaintiffs failed to exhaust all administrative remedies with respect to their Title VII claims because alleged acts in 2016 and January of 2017 occurred more than 300 days before plaintiffs filed EEOC charges. Def. Mot. 9.

"To bring suit under Title VII in a deferral state, such as Pennsylvania, a plaintiff must first file a charge with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1)." *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 686–87 (E.D. Pa. 2016). Typically, discrete acts of discrimination are not actionable if time-barred. *Id.* "However, timeliness is analyzed differently when the claim is one for hostile work environment . . . . '[C]ourt[s] may consider [the] entire scope of a hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)).

In this case plaintiffs have asserted hostile work environment claims under Title VII and argue that the "adverse employment actions were continuing and ongoing, through the date of plaintiffs' termination on August 22, 2018." Pls. Resp. 14. As a result, the Court rejects

defendants' argument that plaintiffs' claims are untimely and must be dismissed for failure to exhaust administrative remedies.[4]

2. *Post-Employment Retaliation Claim Under Title VII*

Plaintiffs assert a post-employment retaliation claim under Title VII alleging that defendants inappropriately "contested their unemployment benefits" and obstructed their "transition away from County employment," the extension of post-employment COBRA rights, and the "retrieval of their personal effects." Sec. Am. Compl. ¶ 65.

"In order to make a claim for post-employment retaliation, a plaintiff must show that he engaged in protected activity, that his former employer had influence over a subsequent employment-related decision, and that his former employer made a retaliatory use of that influence to the detriment of the plaintiff's employment opportunities." *Boandl v. Geithner*, 752 F. Supp. 2d 540, 567 (E.D. Pa. 2010). "In essence, post-employment retaliation must 'involve[ ] some harm to an employee's employment opportunities.'" *Id.* at 568 (citing *Nelson v. Upsala College*, 51 F.3d 383, 388 n.6 (3d Cir. 1995)).

First, defendants argue that plaintiffs' claims of post-employment retaliation with regard to the obstruction of COBRA rights, transition away from County employment, and retrieval of personal effects fail because they do not allege that these acts harmed plaintiffs' future employment opportunities. Defs. Mot. 15–16. The Court agrees. Plaintiffs have not alleged any facts connecting these allegations to any future employment opportunity.

---

[4] Defendants also argue that McIntyre's Complaint was not filed within 90 days of the date on which she received a right-to-sue letter from the EEOC. *See* Defs. Mot. 6; 42 U.S.C. § 2000e-5(f)(l). Although McIntyre's original Complaint was filed more than 90 days after receipt of her first right-to-sue letter, McIntyre filed a second charge of discrimination with the EEOC following her termination and received a second right-to-sue letter on September 7, 2018. Pl. Resp. 14. McIntyre subsequently commenced this action on November 23, 2018, well within 90 days of receiving the September 7, 2018 right-to-sue letter. Thus, the Court rejects defendants' argument that McIntyre's claims are time-barred.

Next, defendants argue that plaintiffs' claim of post-employment retaliation based on defendants' opposition to plaintiffs' unemployment benefits must be dismissed because plaintiffs fail to show a connection between their protected activity and the opposition to their unemployment claims. Defs. Mot. 16.

An employer's opposition to a plaintiff's claim for unemployment compensation can constitute post-employment retaliation because it can affect a plaintiff's future employment opportunities. *Stezzi v. Citizens Bank of Pennsylvania*, No. 10-4333, 2012 WL 4717900, at *4 (E.D. Pa. Oct. 4, 2012). However, a plaintiff must allege a connection between the protected activity and the contest of unemployment benefits. *Boandl*, 752 F. Supp. 2d at 567. In this case, defendants claim that Delaware County had a legal basis to contest plaintiffs' claim for unemployment benefits because plaintiffs were being investigated for inappropriate use of their computers prior to the termination of their employment. However, plaintiffs allege that investigation was a retaliatory action. For that reason, plaintiffs have sufficiently alleged a connection between their complaints of discrimination and the County's opposition to their unemployment benefits.

Thus, the Court denies that part of defendants' motion seeking dismissal of plaintiffs' claim of post-employment retaliation related to plaintiffs' unemployment benefits and grants that portion of defendants' motion seeking dismissal of plaintiffs' post-employment retaliation claims related to the obstruction of COBRA rights, transition away from County employment, and retrieval of personal effects.

### B. Section 1983 Claims (Count III)

#### 1. *Monell Claim Against Delaware County*

Defendants argue that plaintiffs offer only "boilerplate allegations of municipal policy or custom" that are "insufficient to state a claim of municipal liability."[5] Defs. Mot. 12. The Court disagrees.

The liability of a municipality—in this case, Delaware County—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipal entity may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id.* at 694.

Plaintiffs aver that the County had a custom and/or practice of "inequity in compensation and advancement opportunities between male and female employees" which violated plaintiff's right to equal protection under the Fourteenth Amendment. Sec. Am. Compl. ¶¶ 15, 76. Plaintiffs detail the many ways in which this custom or practice was carried out including, *inter alia*, unequal pay, fewer opportunities for promotion, unequal administration of vacation and sick time, record keeping. *Id.* ¶¶ 13–22.

"A plaintiff is not obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries." *Rodriguez v. City of Phila.*, No. 14-7362, 2015 WL 4461785, at *4 (E.D. Pa. July 21, 2015). The

---

[5] Defendants also incorrectly state that "Count III of Plaintiffs' Second Amended Complaint asserts a claim under the Pennsylvania Constitution whereby Plaintiffs seek money damages against all individual Defendants" and argue that "in Pennsylvania there is no viable cause of action for money damages under the Pennsylvania constitution." Defs. Mot. 9. Count III of plaintiffs' Second Amended Complaint asserts claims for violations of plaintiffs' rights guaranteed by the United States Constitution through § 1983, not the Pennsylvania Constitution.

Court thus concludes that plaintiffs have carried their burden to identify a custom or policy at this stage of the proceedings.

2. *Section 1983 Claims Against Individual Defendants Brennan and Boyce*

Next, defendants argue that plaintiffs' § 1983 claims against Brennan and Boyce must be dismissed because plaintiffs' have failed to aver personal involvement by each defendant in the decision to terminate plaintiffs. Defs. Mot. 12. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").

Plaintiffs argue that the constitutional violations alleged against defendants Boyce and Brennan "occurred over a period of years, and were not merely restricted to their firing." Pls. Resp. 16. Taking plaintiffs' allegations as true, Brennan and Boyce were involved in a series of discriminatory actions against plaintiffs. First, Boyce was complicit in providing males with benefits such as unearned overtime pay which were not provided to women. Sec. Am. Compl. ¶ 20. Second, after plaintiffs complained about "fraud, waste, and discriminatory practices," Boyce arbitrarily forced plaintiffs to attend twice daily meetings with Brennan to humiliate, harass, and retaliate against them for complaints of discrimination. *Id.* ¶ 25. No male employees were required to attend such meetings. *Id.* Third, Brennan threatened plaintiffs' employment if they ever put complaints in writing or make complaints outside of the ESD. *Id.* ¶ 30. Finally, plaintiffs allege that "their supervisors"—Brennan and Boyce—fabricated a "bogus" investigation in retaliation for plaintiffs' complaints of discrimination and misconduct that ultimately led to plaintiffs' termination. *Id.* ¶ 45. The Court thus rejects defendants' argument

9

and concludes that plaintiffs' have adequately pled that Brennan and Boyce were personally involved in the alleged constitutional violations.

       3. *Qualified Immunity of Individual Defendants Brennan and Boyce*

Next, defendants argue that Brennan and Boyce are entitled to qualified immunity because "the overwhelming majority of allegations made do not identify Boyce or Brennan as an individual who participated in any decision to violate plaintiffs' rights." Defs. Mot. 19. Therefore, they take the position that Brennan and Boyce are not alleged to have violated clearly established constitutional rights. *Id.*

"The primary purpose of qualified immunity is to shield public officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016). "This immunity can be overcome, however, when public officials violate clearly established constitutional rights of which a reasonable person would have been aware." *Id.*

The Court concludes that Brennan and Boyce are not entitled to qualified immunity at this stage of the litigation. Taking the allegations in the Second Amended Complaint as true, Brennan and Boyce engaged in a series of discriminatory and retaliatory actions that a reasonable person would have recognized as unlawful. *See supra* Section IV(C) (citing Sec. Am. Compl. ¶¶ 20, 24, 25, 30). *See also e.g. Angelella v. Avvisato,* No. 15-00511, 2016 WL 4379098, at *8 (M.D. Pa. Aug. 17, 2016) (finding allegations of an arbitrary uniform policy inequitably enforced between men and women, along with harassing conduct, sufficient to allege a constitutional violation in assessing qualified immunity argument). The Court thus rejects defendants' arguments that Boyce and Brennan are entitled to qualified immunity.

*4. Due Process Claim Under § 1983*

Plaintiffs allege that they were deprived of due process in violation of the Fourteenth Amendment when they were suspended and terminated from their positions at the ESD. To plead such a claim, plaintiffs must allege that "(1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [them] did not provide 'due process of law.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009).

Defendants argue that plaintiffs, as at-will employees, had no property interest in continued employment sufficient to support a due process claim. Defs. Mot. 20. The Court agrees. A person must have more than a unilateral expectation of continued employment to have a property interest in a job. They must have a "legitimate claim of entitlement" to such continued employment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). An at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988)).

Plaintiffs have not asserted any facts showing that they had a legitimate entitlement to continued employment. Therefore, plaintiffs have failed to plead facts setting forth a due process claim under § 1983. The Court thus grants that part of defendants' motion seeking dismissal of plaintiffs' due process claim.

*5. First Amendment Retaliation Claim Under § 1983*

To establish a First Amendment retaliation claim against an employer a plaintiff must allege that: (1) her speech is protected by the First Amendment, and (2) the speech was a substantial or motivating factor in the alleged retaliatory action. *Dougherty v. Sch. Dist. of*

11

*Phila.*, 772 F.3d 979, 986 (3d Cir. 2014). A public employee's speech is protected by the First Amendment if (1) the employee speaks as a citizen, not as an employee; (2) the speech involves a matter of public concern; and (3) the government lacks an adequate justification for treating the employee differently than the general public based on its needs as an employer. *Id.* at 987.

Defendants argue that plaintiffs have not sufficiently pled a First Amendment retaliation claim because plaintiffs' have not alleged that their speech was on a matter of public concern. Defs. Mot. 20. The Court disagrees. Plaintiffs' allegations, though sparse, state that plaintiffs made repeated complaints of, *inter alia*, gender discrimination and retaliation. Sec. Am. Compl. ¶¶ 3, 24, 28, 29, 30.

Where an employee complaint is made to protect the interests of others, as opposed to focusing solely on that employee's own abuse and mistreatment, such complaints can constitute a matter of public concern. *See Sanguigni v. Pittsburg Bd. of Pub. Educ.*, 968 F.2d 393, 399 (3d Cir.1992); *see also Gaj v. U.S. Postal Serv.*, 800 F.2d 64, 67 (3d Cir.1986) (holding that an employee's complaints about safety matters and working conditions did not to relate to matters of public concern because "the complaints were not made to protect the interests of other employees but only to protect the interests of the complaining employee himself.").

The Court cannot determine, on the present record, whether plaintiffs' complaints were focused solely on matters of personal concern or whether, in addition, they were made to protect the interests of other employees. Therefore, drawing all reasonable inferences in favor of the plaintiffs, the Court concludes that plaintiffs' First Amendment retaliation claim under § 1983 is sufficiently pled to survive the present motion to dismiss.

### C. Pennsylvania Whistleblower Claim

Defendants argue that plaintiffs' whistleblower claims must be dismissed because the Second Amended Complaint fails to state how plaintiffs made a "good faith report" to the appropriate authority of an "instance of wrongdoing or waste." Def. Mot. 14. Furthermore, defendants argue that plaintiffs fail to adequately plead that their alleged reports led to a retaliatory action. *Id.* The Court rejects defendants' argument.

To assert a *prima facie* case under the Pennsylvania Whistleblower Law, a plaintiff must plead that, prior to the alleged acts of retaliation, [s]he had made a good faith report of wrongdoing to appropriate authorities." *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015) (quoting *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) (internal quotations omitted)). The plaintiff must also present evidence of a causal connection between the report she made and the alleged acts of retaliation. *Baylets-Holsinger v. Pennsylvania State Univ.*, No. 18-0060, 2019 WL 2016553, at *6 (M.D. Pa. Mar. 22, 2019).

Plaintiffs asserted that they made multiple good faith reports of wrongdoing in the ESD including "discriminatory, retaliatory, wasteful, and fraudulent practices" in the years leading up to their termination. Sec. Am. Compl. ¶¶ 28–29. Although the Second Amended Complaint does not detail each alleged report, plaintiffs specifically note that they both submitted written complaints to DeVlieger, the Director of Personnel, in May and June of 2017. *Id.* These allegations sufficiently pled a good faith report of wrongdoing sufficient to withstand a motion to dismiss. *See Stoneback v. ArtsQuest*, No. 12-3286, 2012 WL 4963624, at *2 (E.D. Pa. Oct. 17, 2012) ("Plaintiff need only plead facts sufficient to permit a reasonable inference that [d]efendants violated some statute, etc., she need not specifically identify it.")

Furthermore, plaintiffs sufficiently pled a causal connection between their complaints and the alleged retaliatory actions. For example, plaintiffs allege that they were threatened by Brennan not to make complaints and that after doing so they were forced to attend twice-daily meetings with Brennan and subjected to a "bogus" investigation. Sec. Am. Compl. ¶¶ 24, 45. The Court thus rejects defendants' argument on this issue. That part of defendants' motion which seeks to dismiss the whistleblower claims is denied.[6]

### D. Punitive Damages Against Delaware County

In Counts I through IV of plaintiffs' Second Amended Complaint, plaintiffs seek, *inter alia*, "punitive damages . . . as permitted under the law and as this Court deems just and proper." Sec. Am. Compl. ¶¶ 15–20. Defendants argue that punitive damages are not an available remedy against Delaware County and ask that any such demands against Delaware County should be stricken. Defs. Mot. 16–17. The Court agrees with defendants that punitive damages are not recoverable against municipalities under Title VII, § 1983, the ADEA, the PHRA, or the Pennsylvania Whistleblower law. *See McNamara v. Susquehanna Cty.*, No. 17-02182, 2018 WL 2183266, at *5 (M.D. Pa. May 11, 2018) (holding Susquehanna County cannot be held liable for punitive damages under Title VII or the PHRA); *Schienblum v. Lehigh Valley Charter Sch. for the Arts*, No. 15-6433, 2016 WL 7429192, at *4 (E.D. Pa. Dec. 20, 2016) (holding that punitive damages are not permitted against municipalities under § 1983); *DeCicco v. Mid-Atl. Healthcare, LLC*, 275 F. Supp. 3d 546, 564 (E.D. Pa. 2017) (discussing the unavailability of punitive damages under the ADEA); *Rankin v. City of Philadelphia*, 963 F. Supp. 463, 480 (E.D.

---

[6] Defendants also argue that plaintiffs' whistleblower claim falls outside of the statute of limitations because "plaintiffs filed this Complaint on November 23, 2018 which was far more than 180 days since any alleged good faith reporting of waste, fraud or wrongdoing." Defs. Mot. 15. Defendants' argument misinterprets the applicable statute of limitations. The Whistleblower Law requires a civil action be brought within 180 days of the alleged *violation* of the statute, not the alleged good faith report. *See Chatterji v. City of Pittsburgh*, No. 18-199, 2019 WL 1099798, at *5 (W.D. Pa. Mar. 8, 2019) (calculating the statute of limitations from the date of the adverse employment action as opposed to the complaint of wrongdoing). In this case, plaintiffs were not terminated until August 22, 2018, well within 180 days of the November 23, 2018 filing of the original Complaint.

Pa. 1997) (concluding that the Pennsylvania Whistleblower Law does not permit the award of punitive damages against a municipality). Accordingly, plaintiffs' demands for punitive damages against Delaware County are stricken.

## V. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants Delaware County, Joe Brennan, and Tim Boyce's Motion to Dismiss the Second Amended Complaint.

The Court grants those parts of defendants' Motion: (1) seeking dismissal of plaintiffs' post-employment retaliation claims in Count II, to the limited extent that such claims are based on alleged obstructions of plaintiffs' transition away from county employment, the extension of COBRA rights, and the retrieval of personal effects; (2) seeking dismissal of plaintiffs' Due Process claim in Count III; and (3) requesting that the Court strike plaintiffs' requests for punitive damages as a remedy against Delaware County. The Motion to Dismiss is denied in all other respects.

An appropriate Order follows.